WORK, Secretary of the Interior, v. UNITED STATES ex rel. CHESTATEE PYRITES & CHEMICAL CORPORATION.

(Court of Appeals of District of Columbia. Submitted April 7, 1924. Decided May 5, 1924.)

No. 4116.

1. Mandamus ⬤⇒72—Action of Secretary of the Interior in refusing to consider claim on merits may be reviewed.

Rule that action of Secretary of the Interior in adjusting claims is not subject to judicial review has no application, where he refuses to consider claim on its merits, on ground that under statute it was not allowable.

2. United States ⬤⇒110—Interest on money borrowed to enlarge plant in order to furnish war necessities allowable as part of net loss.

Interest on money borrowed by relator company to enlarge its plant to comply with demands to furnish war necessities, made on relator company by Department of the Interior under Act Oct. 5, 1918 (Comp. St. Ann. Supp. 1919, §§ 3115⅛s–3115⅛uu), should be allowed as part of net loss, under Act March 2, 1919, § 5, as amended by Act Nov. 23, 1921 (Comp. St. Ann. Supp. 1923, § 3115¹⁴/₁₅e).

3. United States ⬤⇒94—Statute allowing claim for loss resulting from furnishing war necessities liberally construed.

Act March 2, 1919, § 5, as amended by Act Nov. 23, 1921 (Comp. St. Ann. Supp. 1923, § 3115¹⁴/₁₅e), authorizing payment of net loss resulting from producing war needs, should be construed liberally, in order to carry out the purposes of its enactment.

Appeal from the Supreme Court of the District of Columbia.

Application for writ of mandamus by the United States, on the relation of the Chestatee Pyrites & Chemical Corporation, against Hubert Work, Secretary of the Interior. From a judgment granting the writ, respondent appeals. Affirmed.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

C. Edward Wright, of Washington, D. C., for appellant.

Hoke Smith, of Washington, D. C., and Edgar Watkins, of Atlanta, Ga., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and MARTIN, Presiding Judge, of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. This appeal is from a judgment of the Supreme Court of the District of Columbia, granting a writ of mandamus directing respondent, the Secretary of the Interior, to take jurisdiction of the claim of relator, appellee company, for interest paid on money borrowed to enable relator company to comply with requests and demands made upon it by the Department of the Interior, under the Act of Congress of October 5, 1918. 40 Stat. 1009 (Comp. St. Ann. Supp. 1919, §§ 3115⅛s–3115⅛uu).

It appears that when the United States entered the War relator was the owner of a pyrites mine, which it operated on a limited scale. In compliance with the demand upon it by the government, in the way of enlargement of its plant to meet the War necessities, it was compelled to borrow the sum of $695,000, on which it obligated itself to pay interest at the rate of 6 per cent. per annum.

A claim was made by relator under the Act of Congress approved March 2, 1919, 40 Stat. 1272, § 5 as amended by an Act approved November 23, 1921, 42 Stat. 322 (Comp. St. Ann. Supp. 1923, § 3115¹⁴/₁₅e), for reimbursement for the loss sustained by reason of its compliance with said request or demand. After three separate hearings and adjudications in the Department of the Interior, relator was awarded $693,313.79. In making the award, the item for interest on the $695,000, borrowed as aforesaid, was disallowed. It is to compel the adjudication and allowance of this claim that the present suit was brought.

[1] At the outset we are confronted by the oft-repeated contention of counsel for respondent that the action of the Secretary of the Interior, in adjusting relator's claim for the net loss sustained, is final and conclusive, and not subject to judicial review. The whole question of jurisdiction to direct by mandamus the adjudication and allowance of claims arising under the present statute was disposed of by this court in the recent case of Work, Secretary of the Interior, v. United States ex rel. Rives, 295 Fed. 225, 54 App. D. C. 84. There, as here, the Secretary refused to consider the claim on its merits, on the ground that under the statute it was not allowable. There was, therefore, no determination of fact made. Whatever the provision in the statute "that the decision of said Secretary shall be conclusive and final" may mean, it has no bearing upon this case, since no adjudication upon the merits was made. The claim was disallowed solely upon the ground that there was no statutory authority for the adjudication and allowance of such a claim. We are called upon, therefore, to review merely the interpretation placed upon the statute by the Secretary—not to review an adjudication based upon issues of fact.

[2] This narrows the case to the single question of law, whether the item of interest is embraced within the claim for net losses incurred by relator. The statute, among other things, provides:

"That all claimants who, in response to any personal, written, or published request, demand, solicitation, or appeal from any of the government agencies mentioned in said act, in good faith expended money in producing or preparing to produce any of the ores or minerals named therein and have heretofore mailed or filed their claims or notice in writing thereof within the time and in the manner prescribed by said Act if the proof in support of said claims clearly shows them to be based upon action taken in response to such request, demand, solicitation or appeal, shall be reimbursed such net losses as they may have incurred and are in justice and equity entitled to from the appropriation in said act."

Closely analogous to the situation here presented is a case arising out of the Civil War, where the Secretary of State, to meet a war emergency, called upon the state of New York to—

"adopt such measures as may be necessary to fill up your regiments as rapidly as possible. We need the men. * * * The government will refund the state for the advances of troops as speedily as the Treasurer can obtain funds for that purpose."

Subsequently Congress passed an act providing for the reimbursement of any state raising troops to protect the nation for "the costs, charges, and expenses properly incurred." To meet the call from the government, the state of New York appropriated money to arm and equip troops, and issued 7 per cent. bonds to raise the money. In adjusting the claim of the state, the department reimbursed it for the amount actually expended, but refused to pay the interest which the state had to pay on its bonds. The facts in that case are the same as in this, excepting that in this case the relator corporation is claiming for interest which it had to pay on its notes. The Supreme Court, in United States v. State of New York, 160 U. S. 598, 620, 16 Sup. Ct. 402, 410 (40 L. Ed. 551), holding the government liable for the interest, said:

"It would be a reflection upon the patriotic motives of Congress if we did not place a liberal interpretation upon those acts, and give effect to what, we are not permitted to doubt, was intended by their passage. * * * Liberally interpreted, it is clear that the acts * * * created, on the part of the United States, an obligation to indemnify the States for *any* costs, charges, and expenses *properly incurred* for the purposes expressed in the act of 1861, the title of which shows that its object was 'to *indemnify* the states for expenses incurred by them in defense of the United States.'"

This is not a claim for interest upon an amount due the relator from the government, but for expenses incurred in performing certain duties required of it by the government. It is not compensation for the use of money due the claimant from the government, but for money paid by relator in order to secure the means with which to meet the demands made upon it by the government. As was said in the New York case:

"We cannot doubt that the interest paid by the state on its bonds, issued to raise money for the purposes expressed by Congress, constituted a part of the costs, charges, and expenses properly incurred by it for those objects. Such interest, when paid, became a principal sum, as between the state and

the United States; that is, became a part of the aggregate sum properly paid by the state for the United States. The principal and interest, so paid, constitutes a debt from the United States to the state."

Being, therefore, an element of the expenses incurred, we think that in equity and justice the interest paid or obligated to be paid in this case should be allowed.

[3] The statute is remedial, and should be construed liberally, in order to carry out the purposes of its enactment.

The judgment is affirmed, with costs.

Writ of error to remove cause to the Supreme Court of the United States granted May 20, 1924.